1 | Michael Rapkine (#222811)
  | mrapkine@afrct.com
2 | ANGLIN, FLEWELLING, RASMUSSEN,
  | CAMPBELL & TRYTTEN LLP
3 | 199 South Los Robles Avenue, Suite 600
  | Pasadena, California 91101-2459
4 | Tel: (626) 535-1900 | Fax: (626) 577-7764

5 | Attorneys for Defendant
  | WELLS FARGO BANK, N.A.
6 | ("Wells Fargo")

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11 | ROBERT J. MITCHELL, *an individual*; | CASE NO.: 4:13-CV-04017-KAW
   | CHRISTINE MITCHELL, *an individual*, |
12 |                                      | [The Honorable Kandis A. Westmore]
   |              Plaintiffs,             |
13 |                                      | **DEFENDANT WELLS FARGO'S NOTICE
   |         vs.                          | OF MOTION AND MOTION TO DISMISS
14 |                                      | THE COMPLAINT**
   | WELLS FARGO BANK, N.A., and DOES 1-  |
15 | 50, inclusive,                       |
16 |              Defendants.             |
17 |                                      | Date:      November 21, 2013
   |                                      | Time:      11:00 a.m.
18 |                                      | Ctrm:      4 (3rd Floor)

19

20 TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

21      PLEASE TAKE NOTICE that on November 21, 2013 at 9:00 a.m. in courtroom 4 of the

22 above-entitled Court, located at 1301 Clay Street, Oakland, California, the Honorable Kandis A.

23 Westmore presiding, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move to dismiss

24 all claims in the complaint pursuant to FRCP 12(b)(6).

25 / / /

26 / / /

27 / / /

28 / / /

*Sidebar (vertical):* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Although the complaint does not clearly set forth individual causes of action, plaintiffs appear to attempt to state a claim under California's recently-enacted Home Owners' Bill of Rights (the "HBOR").  Grounds for the 12(b)(6) motion are as follows:

Plaintiffs fail to state a claim under the HBOR because:  (i) this state law claim is preempted by the Home Owners' Loan Act ("HOLA"); (ii) plaintiffs' inability to tender even a portion of their considerable debt vitiates this claim; (iii) the HBOR claim is not yet ripe because Wells Fargo has not initiated a non-judicial foreclosure with respect to the subject property; (iv) the complaint and accompanying exhibits are devoid of any facts showing that plaintiffs pursued their appeal rights under the HBOR; and (v) inspection of Exhibit D to the complaint reveals that plaintiffs never asked Wells Fargo to provide the Net Present Value ("NPV") *inputs* – instead, plaintiffs requested "a copy of the NPV", which would contain proprietary information regarding *how* Wells Fargo arrived at its calculations.

The motion to dismiss is based upon this notice, the memorandum of points and authorities, the complaint, the accompanying request for judicial notice, and on Wells Fargo's argument at the hearing.

Respectfully submitted,

Dated:  September 16, 2013

ANGLIN, FLEWELLING, RASMUSSEN,
        CAMPBELL & TRYTTEN LLP

By:   /s/ Michael Rapkine
        Michael Rapkine
        mrapkine@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.
("Wells Fargo")

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

1. INTRODUCTION ........................................................................................................... 1

2. SUMMARY OF THE COMPLAINT ............................................................................. 2

3. THE INSTANT ACTION ARISES FROM "LITIGATION-RELATED ACTIVITY" AND ON THIS BASIS, WELLS FARGO RESERVES ITS RIGHT TO BRING AN ANTI-SLAPP MOTION ............................................................. 3

4. PLAINTIFFS CANNOT PROSECUTE THIS ACTION DUE TO THEIR INABILITY TO TENDER THE CONSIDERABLE DEBT THAT IS OWED TO WELLS FARGO ......................................................................................................... 3

5. PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A VIOLATION OF THE RECENTLY-ENACTED HOME OWNERS' BILL OF RIGHTS ("HBOR") ......................................................................................................................... 5

6. THE HOME OWNERS' LOAN ACT ("HOLA") PREEMPTS THE ENTIRE COMPLAINT ..................................................................................................................... 6

   A. As A Federally-Chartered Savings Bank, World Savings Bank, FSB Operated Under HOLA ............................................................................................ 6

   B. Regulations Promulgated By The OTS Preempt Any State Law That Affects The Operation Of A Federal Savings Association ................................. 6

   C. State Laws Preempted by HOLA .................................................................... 7

   D. The Application of HOLA Applies to Wells Fargo as Successor To World Savings Bank, FSB ................................................................................ 8

      i. Exercising Plenary Authority Over FSBs and their Loans, the OTS Has Mandated that HOLA Preemption Attaches To And Survives the Sale or Transfer of a FSB-originated Loan .......................... 8

      ii. The Parties Specifically Chose HOLA and its Implementing Regulations as the Governing Law, and They Mutually Agreed that HOLA Would Apply to the FSB and its Successors ....................................................................................................... 11

      iii. A Judicial Construction of the Loan Which Fails to Apply HOLA Impermissibly Alters the Terms of the Contract ........................ 12

   E. The Application of HOLA Preempts the HBOR Claim in the Instant Action ................................................................................................................... 13

7. CONCLUSION .................................................................................................................. 18

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**FEDERAL CASES**

*Alicea v. GE Money Bank*,
　　2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009, Armstrong, J.)......................4

*American Banker Association v. Lockyear*,
　　239 F. Supp. 2d 1000 (E.D. Cal. Dec. 23, 2002) ....................................................6

*Anaya v. Advisors Lending Group*,
　　2009 U.S. Dist. LEXIS 68373, *27 (E.D. Cal. Aug. 3, 2009)................................4

*Auer v. Robbins*,
　　519 U.S. 452 (1997)..........................................................................................9

*Bank of America v. The City & County of San Francisco*,
　　309 F.3d 551 (9th Cir. 2002) ......................................................................6, 7

*Bennett v. Wells Fargo Bank, N.A.*,
　　2013 U.S. Dist. LEXIS 112756, *12 (N.D. Cal. Aug. 9, 2013, Westmore, J.) ......................8

*Biggins v. Wells Fargo & Co.*,
　　266 F.R.D. 399 (N.D. Cal. July 27, 2009, White, J.)............................................14

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
　　467 U.S. 837 (1984)..........................................................................................9

*DeLeon v. Wells Fargo Bank, N.A.*,
　　729 F. Supp. 2d 1119 (N.D. Cal. June 9, 2010, Fogel, J.) ....................................7, 14, 15, 16

*Espinoza v. Farah Mfg. Co.*,
　　414 U.S. 86 (1973)............................................................................................9

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*,
　　458 U.S. 141 (1982)......................................................................................7, 10

*Glendale Fed. Sav. & Loan Ass'n v. Fox*,
　　459 F. Supp. 903 (C.D. Cal. 1978) ..................................................................7

*Gorton v. Wells Fargo Bank N.A.*,
　　2013 U.S. Dist. LEXIS 86006, *11 (C.D. Cal. June 3, 2013, Selna, J.)................................15

*Griggs v. Duke Power Co.*,
　　401 U.S. 424 (1971)..........................................................................................9

*Guerrero v. Wells Fargo Bank, N.A.*,
　　2010 U.S. Dist. LEXIS 96261, *8 (C.D. Cal. Sept. 14, 2010, Fairbank, J.)....................7, 14

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hayes v. Wells Fargo Bank, N.A.,*
    2013 U.S. Dist. LEXIS 115435, *13, 19 (N.D. Cal. Aug. 3, 2013, Westmore, J.)............ 16, 8

*Ibarra v. Loan City,*
    2010 U.S. Dist. LEXIS 6583, *17 (S.D. Cal. Jan. 27, 2010, Gonzalez, J.) .......................... 14

*Kaplan v. Wells Fargo Bank, N.A.*
    2013 U.S. Dist. LEXIS 109023, *9 (C.D. Cal. July 30, 2013, Feess, J.) ............................. 15

*Long Island Care at Home, Ltd. v. Coke,*
    551 U.S. 158 (2007)................................................................................................ 9, 10

*Mata v. Wells Fargo Bank, N.A.,*
    2013 U.S. Dist. LEXIS 108197, *12 (C.D. Cal. July 31, 2013, O'Connell, J.) ..................... 7

*Montoya v. Countrywide Bank,*
    2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009, Ware, J.)............................... 4

*Murillo v. Aurora Loan Services, LLC,*
    2009 U.S. Dist. LEXIS 61791, *11 (N.D. Cal. July 17, 2009, Ware, J.)............................. 15

*Naulty v. GreenPoint Mortg. Funding, Inc.,*
    2009 U.S. Dist. LEXIS 79250, *12 (N.D. Cal. Sept. 3, 2009, Patel, J.)............................. 13

*Nguyen v. Wells Fargo Bank, N.A.,*
    749 F. Supp. 2d 1022 (N.D. Cal. Oct. 25, 2010) ................................................................ 15

*Pascual v. Wells Fargo Bank, N.A.,*
    2013 U.S. Dist. LEXIS 112061, *17 (N.D. Cal. Aug. 8, 2013, Westmore, J.) ...................... 8

*Progressive Consumers Fed. Credit Union v. United States,*
    79 F.3d 1228 (1st Cir. 1996)............................................................................................... 12

*Settle v. World Savings Bank, FSB,*
    2012 U.S. Dist. LEXIS 4215 (C.D. Cal. Jan. 11, 2012) ...................................................... 11

*Silvas v. E\*Trade Mortgage Corp.,*
    514 F.3d 1001 (9th Cir. 2008) ............................................................................. 7, 9, 13, 15

*Snyder v. Wachovia Mortg.,*
    2010 U.S. Dist. LEXIS 68956, *24 (E.D. Cal. July 9, 2010, O'Neill, J.) ............................. 14

*Stefan v. Wachovia, World Savings,*
    2009 U.S. Dist. LEXIS 113480, *8-9 (N.D. Cal. Dec. 7, 2009, Armstrong, J.).................... 15

*Taguinod v. World Savings Bank,*
    755 F. Supp. 2d 1064 (C.D. Cal. Dec. 2, 2010, Wilson, J.).................................................. 16

*Varella v. Wells Fargo Bank, N.A.,*
    2012 U.S. Dist. LEXIS 181323, *11-12, 18 (N.D. Cal. Dec. 21, 2012, Westmore, J.)..... 8, 16

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Zarif v. Wells Fargo Bank, N.A.*,
    2011 U.S. Dist. LEXIS 29867, *8 (S.D. Cal. Mar. 23, 2011, Hayes, J.) .............................. 14

*Zlotnik v. U.S. Bancorp, et al.*,
    2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009, Hamilton, J.) ................. 7

**STATE CASES**

*Abdallah v. United Sav. Bank*,
    43 Cal. App. 4th 1101 (1996) ........................................................................................ 4

*Akopyan v. Wells Fargo Home Mortgage, Inc.*,
    215 Cal. App. 4th 120 (2013) ................................................................................... 9, 10

*FCPI v. E&G Investments, Ltd.*,
    207 Cal. App. 3d 1018 (1989) ...................................................................................... 4

*Karlsen v. American Sav. & Loan Ass'n*,
    15 Cal. App. 3d 112 (1971) ......................................................................................... 4

*Mabry v. Superior Court*,
    185 Cal. App. 4th 208 (2010) ................................................................................ 16, 17

*Maudlin v. Pacific Decision Sciences Corp.*,
    137 Cal. App. 4th 1001 (2006) ................................................................................... 12

*Meetz v. Mohr*,
    141 Cal. 667 (1904) ..................................................................................................... 4

*Nevin v. Salk*,
    45 Cal. App. 3d 331 (1975) ........................................................................................ 13

*Safeco Ins. Co. v Robert S.*,
    26 Cal. 4th 758 (2001) ............................................................................................... 13

*Sipe v. McKenna*,
    88 Cal. App. 2d 1001 (1948) ........................................................................................ 4

*Stebley v. Litton Loan Servicing, LLP*,
    202 Cal. App. 4th 522 (2011) ..................................................................................... 17

*Wade v. Diamond A Cattle Co.*,
    44 Cal. App. 3d 453 (1975) ........................................................................................ 13

*Weiss v. Washington Mutual Bank*,
    147 Cal. App. 4th 72 (2007) ....................................................................................... 13

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq.*.................................................................................... 6, 12, 17

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

12 U.S.C. § 1464(a) .................................................................................... 6

12 U.S.C. § 5553 ........................................................................................ 11

**STATE STATUTES**

Cal. Civ. Code § 2923.5 ................................................................... 15, 16, 17

Cal. Civ. Code §§ 2923.5 and 2924 .......................................................... 15

Cal. Civ. Code §§ 2923.5 and 2924, *et seq.* ............................................ 16

Cal. Civ. Code § 2923.6 ............................................................................... 5

Cal. Civ. Code § 2923.6(c) ........................................................................... 5

Cal. Civ. Code § 2923.6(f)(3) .............................................................. 1, 3, 5

Cal. Civ. Code §§ 2924.12 and 2924.17 .................................................. 17

Cal. Civ. Code § 2924.12(b) ...................................................................... 17

Cal. Civ. Code § 2924.17(c) ...................................................................... 17

**REGULATIONS**

12 C.F.R. § 545.2 ......................................................................................... 7

12 C.F.R. § 560 ............................................................................................ 6

12 C.F.R. § 560.2 ......................................................................................... 9

12 C.F.R. § 560.2(a) ..................................................................................... 7

12 C.F.R. § 560.2(b) ....................................................................... 7, 13, 17

12 C.F.R. § 560.2(b)(4) .......................................................................... 8, 14

12 C.F.R. §§ 560.2(b)(4) and (10) ...................................................... 14, 17

12 C.F.R. § 560.2(b)(10) ................................................... 8, 10, 14, 15

**OTHER AUTHORITIES**

1 Witkin, *Summary of California Law,* Contracts, § 715 (8th ed. 1973) ..................................... 13

9 Witkin, *Summary of California. Law*, Corporations § 198(10th Ed. 2005) .............................. 12

OCC 2011-47, OTS Integration Letter (Dec. 8, 2011) ............................. 10

OTS Op. Letter No. P-2003-5 (July 22, 2003) p. 13 & n. 18 ........................................... 9, 10, 11

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

This action arises from a $1.3M home loan that plaintiffs obtained in 2007 from Wells Fargo's predecessor, World Savings Bank, FSB.  Plaintiffs defaulted on the mortgage in 2011, and in an attempt to secure a loan modification and to challenge an anticipated non-judicial foreclosure, plaintiffs allege that Wells Fargo has violated the newly-enacted Home Owners' Bill of Rights (the "HBOR").  Specifically, the complaint alleges that Wells Fargo violated Civil Code § 2923.6(f)(3)[1] by failing to provide plaintiffs with the "net present value" ("NPV") inputs following a denial of plaintiffs' loan modification application on May 18, 2013. (Comp. ¶ 12).

For a myriad of reasons, plaintiffs' allegations fail as a matter of law.  First, inspection of Exhibit D to the complaint reveals that plaintiffs never asked for the NPV *inputs* – instead, their attorney requested "a copy of the NPV", which would contain information regarding *how* Wells Fargo arrived at its calculations.  Wells Fargo correctly responded that "the NPV calculations are proprietary."

Furthermore, the complaint cannot state a claim under the HBOR because Wells Fargo has not initiated a non-judicial foreclosure with respect to the subject property.  Although plaintiffs ceased making mortgage payments in 2011, a notice of default has yet to be recorded.  Equally important, plaintiffs cannot demonstrate that Wells Fargo frustrated their appeal rights under the HBOR, for there is no allegation that plaintiffs furnished Wells Fargo with documentation that was requested by the bank following the modification denial letter dated May 18, 2013.

Finally, the allegations in the complaint are preempted by the Home Owners' Loan Act ("HOLA") and also fail due to plaintiffs' inability to tender their considerable indebtedness.  As detailed below, amendment of the pleadings would be futile and Wells Fargo's motion should therefore be granted without leave to amend.

---

[1]  The complaint mistakenly references Civil Code § 2924.6(f)(3) at paragraph 12.  No such Code Section exists.

## 2.   SUMMARY OF THE COMPLAINT

On or around July 6, 2007, plaintiffs obtained a $1,309,000 home loan from Wells Fargo's predecessor, World Savings Bank, FSB.[2]  (Comp. ¶ 5).  The terms of the loan were memorialized by a promissory note that was secured by a deed of trust against 518 Oakshire Place, Alamo, California (Comp. ¶¶ 1, 5).  Attached to the complaint as Exhibits A and B are copies of the promissory note and deed of trust signed by plaintiffs.

The pleadings concede that plaintiffs defaulted on the mortgage around December 2011, due to problems with their business. (Comp. ¶ 6).  Sometime thereafter, plaintiffs retained the Law Offices of Gene Choe to represent them in anticipated litigation in an attempt to secure a loan modification (Comp. ¶ 7).  The complaint adds that this law firm submitted a loan modification application to Wells Fargo without the plaintiffs' consent, including "inaccurate and false information relating to Plaintiffs' finances."  *Id.*  Unhappy with the representation provided, plaintiffs "terminated their relationship with The Choe Firm and received a full refund of all they paid to the Choe Firm."  *Id.*

In January 2013, plaintiffs' new attorney (Camacho & Associates) submitted a loan modification application to Wells Fargo, through the bank's defense counsel, Stacy Knight, Esq. of Winston and Strawn. (Comp. ¶ 8).  On May 18, 2013, Wells Fargo sent plaintiffs a modification denial letter, which is attached as Exhibit C to the complaint. (Comp. ¶ 9; Exh. C).  The denial letter stated that Wells Fargo could not modify the subject loan "because a modification would result in a Negative Net Present Value . . ." (Exh. C to Comp.).  The letter added that plaintiffs' gross monthly income of $14,387 and an estimated property value of $1,500,000 were used in the NPV calculation.  *Id.*  Wells Fargo also explained that: "to appeal the decision, contact us through your attorney.  We will inform what documents you are required to submit to support your appeal."  *Id.*

---

[2]  World Savings Bank, FSB changed its name to "Wachovia Mortgage, FSB" and later merged into Wells Fargo Bank, N.A.  Attached to the accompanying Request for Judicial Notice ("RJN") as Exhibits A through E are documents issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC that evidence this name change and merger.  For purposes of this motion, World Savings will hereinafter be referred to as "Wells Fargo."

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  In response to the denial letter, plaintiffs' counsel sent an email to Stacy Knight on May

2  20, 2013, requesting "a copy of the NVP" and explaining that plaintiffs "would like to file an

3  appeal." (Comp. ¶ 10; Exh. D to Comp.). In Ms. Knight's email response, she explained that

4  "[t]he NPV calculations are proprietary" and added, "[t]o appeal, please submit a new appraisal

5  from a licensed appraiser within 30 days of the date of the [denial] letter." (Exh. D to Comp.).

6  Based on the foregoing, the complaint alleges that Wells Fargo has violated Civil Code

7  § 2923.6(f)(3) by failing to provide plaintiffs with "all of the inputs used in the net present value

8  calculation." (Comp. ¶ 12). As briefed below, this allegation suffers from several incurable

9  defects.

10  **3.    THE INSTANT ACTION ARISES FROM "LITIGATION-RELATED ACTIVITY"**

11  **AND ON THIS BASIS, WELLS FARGO RESERVES ITS RIGHT TO BRING AN**

12  **ANTI-SLAPP MOTION**

13  As a preliminary matter, it should be noted that this lawsuit arises from communications

14  between plaintiffs' attorney and counsel for Wells Fargo (Winston & Strawn, LLP), in

15  connection with a settlement agreement in the action styled *In Re: Wachovia Corp. "Pick-A-*

16  *Payment" Mortgage Marketing And Sales Practices Litigation*, Case No. 5:09-md-02015-JF. As

17  reflected in an extremely voluminous document that was filed under seal in the class action,

18  plaintiffs are class members. (Doc. 464, pg. 274 of 1031; 5:09-md-02015-JF). Pursuant to the

19  class action settlement agreement, Wells Fargo was obligated to *reevaluate* plaintiffs for a

20  potential loan modification. Wells Fargo's outside counsel (Stacy Knight at Winston & Strawn)

21  dealt with plaintiffs' attorney to perform this function in compliance with the settlement, and

22  plaintiffs now bring this new suit arising from these communications. Wells Fargo is currently

23  evaluating whether to bring an anti-SLAPP motion on the heels of this 12(b)(6) motion.

24  **4.    PLAINTIFFS CANNOT PROSECUTE THIS ACTION DUE TO THEIR**

25  **INABILITY TO TENDER THE CONSIDERABLE DEBT THAT IS OWED TO**

26  **WELLS FARGO**

27  In connection with the HBOR allegations in the complaint, plaintiffs seek an order

28  enjoining a potential trustee's sale. (Comp. ¶ 13; Prayer for Relief ¶ 1). However, to receive

such equitable relief, a debtor must make a valid tender of their full outstanding debt.  See e.g., *Sipe v. McKenna*, 88 Cal. App. 2d 1001, 1006 (1948) ("A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale . . ."); *Meetz v. Mohr*, 141 Cal. 667, 673 (1904) (injunction denied due to lack of tender).

Likewise, a debtor must make a valid tender when bringing a claim that challenges the foreclosure process, or when asserting any cause of action "implicitly integrated to the sale." See e.g., *Alicea v. GE Money Bank*, 2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009, Armstrong, J.) ("When a debtor is in default on a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); *Montoya v. Countrywide Bank*, 2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009, Ware, J.) ("as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt."); *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (to maintain any type of wrongful foreclosure claim, a plaintiff must establish a viable tender of the full debt); *FCPI v. E&G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1022 (1989) ("The rationale behind the [tender] rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs."); *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (1971) (a tender of one's debt is necessary for a cause of action "implicitly integrated" to the sale process).  Accordingly, the instant complaint must be accompanied by a legitimate tender.

Here, the complaint contains the concession that plaintiffs began to experience financial difficulty around October 2008 and that they defaulted on the loan in December 2011. (Comp. ¶ 6).  Given the fact that Wells Fargo has not received a mortgage payment in nearly two years, plaintiffs' inability to tender even a portion of their debt is manifest.  *Anaya v. Advisors Lending Group*, 2009 U.S. Dist. LEXIS 68373, *27 (E.D. Cal. Aug. 3, 2009) (a failure to make payments over a protracted period reflects an inability to tender the amount owed).  For this reason alone,

allowing this action to survive would not only be unfair, but a waste of judicial resources.

**5.    PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A VIOLATION OF THE RECENTLY-ENACTED HOME OWNERS' BILL OF RIGHTS ("HBOR")**

Putting aside the plaintiffs' lack of tender, the allegations in the complaint do not constitute a violation of the HBOR for three key reasons.  To begin with, although Civil Code § 2923.6(f)(3) obligates a loan servicer to provide the NPV inputs upon a borrower's request, plaintiffs' counsel did not ask for the inputs.  Instead, plaintiffs' attorney requested "a copy of the NPV." (Exh. D to Comp.).  Wells Fargo's counsel at Winston & Strawn (Stacy Knight) correctly responded that "the NPV calculations are proprietary."  *Id.*

Equally important, plaintiffs cannot credibly allege that Wells Fargo has frustrated their right to an appeal under the HBOR, for reflected in Exhibit D to the complaint, Wells Fargo explained what documentation was required to appeal the modification denial letter. (Exh. D: "To appeal, please submit a new appraisal from licensed appraiser without 30 days of the date of the [denial] letter.").  Tellingly, the complaint is devoid of an allegation that plaintiffs pursued an appeal by furnishing Wells Fargo with an updated appraisal.

Finally, it must be stressed that even though plaintiffs ceased making mortgage payments in December 2011 (Comp. ¶ 6), a notice of default has <u>not</u> been recorded with respect to the subject loan.  The primary objective of Civil Code § 2923.6, through its subdivision (c), is to prevent "dual tracking" – in other words, a lender: "shall not record a notice of default or notice of sale, or conduct a trustee's sale, while [a] complete first lien loan modification application is pending."  Civil Code § 2923.6(c).  In the present case, Wells Fargo has not even initiated the non-judicial foreclosure process.  Just as plaintiffs fail to allege that they followed through with the HBOR appeal process, the pleadings have not and cannot allege that a notice of default has been recorded.  Accordingly, any HBOR-based claim is a nullity.

/ / /

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   **6.   THE HOME OWNERS' LOAN ACT ("HOLA") PREEMPTS THE ENTIRE**

2   **COMPLAINT**

3   **A.   As A Federally-Chartered Savings Bank, World Savings Bank, FSB Operated**

4   **Under HOLA**

5   In addition to the above defects, the allegations against Wells Fargo are preempted by the

6   Home Owners' Loan Act ("HOLA"),[3] 12 U.S.C. § 1461, *et seq*., and its implementing

7   regulations, including 12 Code of Federal Regulations ("CFR") § 560, articulated by the

8   Treasury Department's Office of Thrift Supervision ("OTS").   As detailed below in Section 6(D)

9   below, plaintiffs' allegations are entirely related to loan "servicing" and "terms of credit",

10  thereby triggering federal preemption.

11  When the loan in question was made to plaintiffs, Wells Fargo's predecessor (World

12  Savings Bank, FSB) was a federally chartered savings bank, organized and operating under

13  HOLA.   On December 31, 2007, World Savings was thereafter renamed as Wachovia Mortgage,

14  FSB, which subsequently merged into Wells Fargo Bank, N.A.   As noted in footnote 2 to this

15  motion, the RJN attaches true and correct copies of records evidencing World Savings' initial

16  charter, its subsequent name change to Wachovia Mortgage, FSB, its governance by the Office

17  of Thrift Supervision, and HOLA's application.   (RJN, Exhs. A - E).

18  **B.   Regulations Promulgated By The OTS Preempt Any State Law That Affects The**

19  **Operation Of A Federal Savings Association**

20  Pursuant to HOLA, the OTS was granted power, "under such regulations as [it] may

21  prescribe – to provide for the organization, incorporation, examination, operation, and regulation

22  of…Federal savings associations…"   12 U.S.C. § 1464(a).   The OTS is thus authorized "to

23  prescribe a nationwide system of operation, supervision, and regulation which would apply to all

24

---

25  [3]  Congress enacted HOLA during the Great Depression to "restore the public's confidence in savings and loan associations at a time when 40% of home loans were in default."   *Bank of*

26  *America v. The City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002).   HOLA was enacted in part due to Congressional dissatisfaction with the regulation of home financing

27  by the states.   *American Banker Association v. Lockyear*, 239 F. Supp. 2d 1000, 1010 (E.D. Cal. Dec. 23, 2002).

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  federal associations." *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal.

2  1978).

3     OTS regulations are "preemptive of any state law purporting to address the subject of the

4  operations of a federal savings association." 12 C.F.R. § 545.2. The "OTS hereby occupies the

5  entire field of lending regulation for federal savings associations…" and a federal savings bank,

6  "may extend credit as authorized under federal law, including this part, without regard to state

7  laws purporting to regulate or otherwise affect their credit activities." 12 C.F.R. § 560.2(a).[4]

8     Furthermore, the courts are quite clear that the HOLA regulations are "pervasive":

9        We have described HOLA and its following agency regulations as
          … so pervasive as to leave no room for state regulatory control.
10       [B]ecause there has been a history of significant federal presence
          in national banking, the presumption against preemption of state
11       law is inapplicable.

12  *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004-1005 (9th Cir. 2008).

13  **C.**   **State Laws Preempted by HOLA**

14     12 CFR § 560.2(b) provides for preemption of state laws that purport to impose upon a

15  federal savings bank and their successors[5] any requirements regarding:

16        * * *

17        **The terms of credit, including** amortization of loans and the
          deferral and capitalization of interest and **adjustments to the**

18  _____

19  [4]  Indeed, case law casts a wide net over claims preempted by HOLA.  In *Bank of America v.
    City & County of San Francisco*, 309 F.3d 551, 558 (2002), the Court noted:  "[S]ince the
20  passage of the HOLA in 1933, OTS regulations have governed the 'powers and operations of
    every federal savings and loan association from its cradle to its corporate grave.'" The Supreme
21  Court has noted that, "[i]t would have been difficult for Congress to give the [OTS] a broader
    mandate." *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-160 (1982).

22

23  [5]  The application of HOLA applies to the successors of federal savings banks.  See e.g*., Mata v.
    Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 108197, *12 (C.D. Cal. July 31, 2013,
24  O'Connell, J.) (in finding that HOLA applied to the acts of Wells Fargo, the court noted that:
    "Plaintiffs contracted with a Federal Savings Bank. Further, the parties agreed to be bound by
25  such laws under the terms of the trust deed.  Thus, HOLA preemption applies in this case.");
    *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010,
26  Fairbank, J.) ("Where a national association, such as [Wells Fargo Bank, N.A.], acquires the loan
    of a federal savings bank, it is proper to apply preemption under HOLA."); *DeLeon v. Wells
27  Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1121 (N.D. Cal. June 9, 2010, Fogel, J.) (same);
    *Zlotnik v. U.S. Bancorp, et al*., 2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009,
28  Hamilton, J.) (same). This issue is discussed in detail in Section 6(D) below.

**interest rate, balance, payments due**, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; 12 C.F.R. § 560.2(b)(4)

**Processing**, origination, **servicing**, sale or purchase **of**, or investment or participation in, **mortgages**; … 12 C.F.R. § 560.2(b)(10) (emphasis added)

* * *

## D.   The Application of HOLA Applies to Wells Fargo as Successor To World Savings Bank, FSB

As a preliminary matter, the vast majority of district courts have correctly held that HOLA preemption continues to apply to FSB-originated loans acquired by a national bank, or any third party investor or servicer for that matter, notwithstanding the fact that these successor entities lack a HOLA charter.  (*See* footnote 5 above for some illustrative cases).  This authority serves to confirm this Court's previous determination that federal preemption under HOLA applies to Wells Fargo's servicing of a World Savings loan.  See e.g., *Hayes v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 115435, *13 (N.D. Cal. Aug. 12, 2013, Westmore, J.) ("Preliminarily, HOLA applies to this case even though Wells Fargo is not a federal savings association, because Plaintiff's loan originated with a federal savings bank, World Savings Bank."); *Bennett v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 112756, *12 (N.D. Cal. Aug. 9, 2013, Westmore, J.) (same); *Pascual v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 112061, *17 (N.D. Cal. Aug. 8, 2013, Westmore, J.) (same); *Varella v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 181323, *11-12 (N.D. Cal. Dec. 21, 2012, Westmore, J.) (same).

What follows are additional reasons why HOLA applies to a loan originated by a FSB which is later acquired through merger by a national bank.

### i.   Exercising Plenary Authority Over FSBs and their Loans, the OTS Has Mandated that HOLA Preemption Attaches To And Survives the Sale or Transfer of a FSB-originated Loan

To begin with, courts must give deference to a federal agency's reasonable interpretation

of its own regulations.  *Auer v. Robbins,* 519 U.S. 452, 461 (1997).[6]  The agency's interpretation of its own regulations controls unless the interpretation is plainly erroneous or inconsistent with the regulations.  *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 170–171 (2007).  In *Silvas v. E\*Trade Mortgage Corp.,* 514 F.3d 1001, 1005 (9th Cir. 2008) the Ninth Circuit noted that the OTS's construction of the preemption analysis under 12 C.F.R. § 560.2 "must be given controlling weight."

In 2003, the OTS interpreted 12 C.F.R. § 560.2 to preempt the New Jersey Predatory Lending Law despite the fact that, as here, an assignee of an FSB-originated loan lacked a HOLA charter.  The OTS succinctly summarized the question before it:

> You further ask whether purchasers or assignees of loans originated by federal savings associations would be subject to claims and defenses that would not apply to the federal savings association that originated the loans[.]

The OTS provided its definitive answer to that question:

> Where the original creditor is a federal savings association, the borrower's ability to assert claims and defenses against that type of creditor is limited by federal preemption[.]  This result would be consistent with the general principle that loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption[.]

OTS Opinion Letter No. P-2003-5 (July 22, 2003) p. 13 & n. 18, *available at* 2003 OTS LEXIS 6, p. 5 [at \*13] (hereafter, "OTS Opinion Letter") (attached to RJN, Exh. F).

In the decade since issuing its opinion, the OTS's answer regarding the breadth and scope of HOLA preemption remains definitive.  The OTS Opinion Letter itself relied on a 1985 Opinion Letter issued by the Federal Home Loan Bank Board,[7] which unequivocally concluded:

---

[6]  *See also*, *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94 (1973) (a general counsel's advisory letter interpreting a statute is the agency's interpretation); *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984) (an administrator of an agency's interpretation of a statute is entitled to deference unless unreasonable); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–434 (1971) ("The administrative interpretation of [a statute] by the enforcing agency is entitled to great deference.").

[7]  "In 1989, the FHLBB was replaced by the Office of Thrift Supervision (OTS) which was given the same plenary power to regulate federal savings associations."  *Akopyan v. Wells Fargo Home Mortgage, Inc.*, 215 Cal. App. 4th 120, 138 (2013).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

2

3

> It is our opinion that such preemption would exist regardless of whether the loans in question are sold by the federal association to a third party, are being serviced by a third party, or whether the escrow deposits are held at a federal association while the loans have been sold in the secondary market.

4   Opinion Gen. Counsel, FHLBB (Aug. 13, 1985), *available at* 1985 FHLBB LEXIS 178 at *5.

5   (attached to RJN, Exh. G).

6   By their Congressionally-mandated implementation of HOLA through the promulgation

7   of regulations and controlling regulatory interpretation, the OTS and its predecessor (the

8   FHLBB) expressly determined that HOLA preemption survives when the FSB loan is sold or

9   otherwise transferred to a third party without a HOLA charter, like a national bank acquiring

10  FSB-originated loans through merger.  The rationale is that state law "might interfere with the

11  ability of  federal savings associations to sell mortgages that they originate under a uniform

12  federal system."  OTS Opinion Letter at p. 7 & n. 18; *Akopyan v. Wells Fargo Home Mortgage,*

13  *Inc.*, 215 Cal. App. 4th 120, 148 (2013).  And the FSB's "sale" of mortgages, of course, is a right

14  that is itself completely free of state "imposed requirements."  12 C.F.R. § 560.2(b)(10).

15  As previously noted, the judiciary is bound to accord deference to a federal agency's

16  interpretation of its own regulations unless plainly erroneous or inconsistent with those

17  regulations.  *Long Island, supra,* 551 U.S. at 170–171.  And the OTS and FHLBB opinion letters

18  are entirely consistent with the Congressional mandate that HOLA exclusively and

19  comprehensively preempts the field.  *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S.

20  141, 153 (1982).

21  Leaving no room for doubt that the 2003 OTS Opinion Letter remains controlling, in late

22  2011, the OTS's post-Dodd Frank successor, the OCC, declared that all regulatory guidance and

23  interpretations issued by the OTS shall remain in effect unless specifically rescinded or modified.

24  *See* OCC 2011-47, OTS Integration Letter (Dec. 8, 2011) (hereinafter, "OCC Integration Letter")

25  (RJN, Exh. H).

26  Observing that the OTS responsibilities were transferred to the OCC effective July 21,

27  2011, the OCC Integration Letter states:  "As a result [of the 2010 Dodd-Frank Act], the OCC

28  assumed the responsibility for the ongoing supervision … and regulation of federal savings

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  associations.  The legislation continues all OTS orders, resolutions, determinations, agreements,

2  regulations, interpretive rules, other interpretations, guidelines, procedures, and other advisory

3  materials in effect the day before the transfer date."[8]  The OCC Integration Letter also indicates

4  that: "OCC bulletins will announce these rescissions" and "to minimize confusion, documents

5  will be watermarked as rescinded on the OCC Web site, or former OTS Web site, as applicable."

6  The 2003 OTS Opinion has never been watermarked, and remains effective and controlling.[9]

7  **ii.**     **The Parties Specifically Chose HOLA and its Implementing Regulations as**

8  **the Governing Law, and They Mutually Agreed that HOLA Would Apply to**

9  **the FSB and its Successors**

10  Putting aside the above opinion letters, the parties in this case expressly agreed that

11  HOLA would govern and construe both the promissory note and deed of trust.  The promissory

12  note states at its Paragraph 12:

13  GOVERNING LAW, SEVERABILITY.

14  This note shall be governed by and construed under federal law
   and federal rules and regulations including those for federally

15  chartered savings institutions, called "Federal Law."

16  Exh. A to Comp. at ¶ 12.

17  The deed of trust signed by the plaintiffs adopts the same term:

18  GOVERNING LAW; SEVERABILITY.

19  This Security Instrument and the Secured notes shall be governed
   by and construed under federal law and federal rules and

20  regulations, including those for federally chartered savings
   institutions ("Federal Law") . . .

21

22  Exh. B to Comp. at ¶ 15.

23

---

24  [8]  HOLA field preemption still exists under Dodd-Frank for all loans, like this one, originated
   prior to its enactment.  12 U.S.C. § 5553.  "[C]laims related to contracts formed prior to the

25  enactment of Dodd-Frank are subject to the preemption analysis in effect at that time."  *Settle v.
   World Savings Bank, FSB*, 2012 U.S. Dist. LEXIS 4215, at *45 (C.D. Cal. Jan. 11, 2012).  The

26  fact that Congress ensured retroactive HOLA field preemption for existing FSB loans indurates
   the dual aspect of HOLA to both FSBs and their loans.

27  [9]  The list of rescinded opinions may be found here: http://www.occ.gov/news-

28  issuances/bulletins/rescinded/occ-rescinded.html.

1   "[F]ederal law and regulations… for federally chartered savings institutions" means the

2   Home Owners' Loan Act. 12 U.S.C. § 1461, *et seq.*  The parties likewise agreed in the deed of

3   trust that: "any person who takes over Lender or obligations under this Security Agreement will

4   have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this

5   Security Instrument." (Exh B to Comp. at ¶ 11).

6        The promissory note even includes the term "successors" in its definition of the word

7   "Lender":  "World Savings Bank, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS

8   AND/OR ASSIGNEES, or anyone to whom the note is transferred." (Exh. A to Comp. at ¶ 1;

9   original capitalization). The deed of trust has a comparable definition at ¶ 1(c). (Exh. B to

10  Comp.).

11       In other words, both instruments contemplated either the sale of World Savings' loan or

12  the sale of World Savings itself.  In the event of such a sale, the parties agreed that World

13  Savings' successor (here, Wells Fargo) would not only "have all" of the original lender's

14  "rights" under the deed of trust, but must also "keep all" the "agreements" in the deed of trust.

15  One of those "rights" and "agreements" under the contract is the application of "federal . . .

16  regulations including those for federally chartered savings institutions." (Exh. A to Comp. at

17  ¶ 12; Exh. B to Comp. at ¶ 15).

18       Put quite simply, the choice of law and "successors" clauses in both the note and deed of

19  trust reveal that the parties intended to continue HOLA's application to the loan well beyond

20  World Savings' origination and initial ownership.[10]

21       **iii.**   **A Judicial Construction of the Loan Which Fails to Apply HOLA**

22              **Impermissibly Alters the Terms of the Contract**

23       The parties also agreed that neither the note nor the deed of trust could be modified

24

25  _____
     [10]  This is entirely consistent with applicable law:  "In a merger the surviving entity "succeeds to
     the rights, property, debts, and liabilities, without other transfer."  9 Witkin, *Summary of Cal.*
26   *Law*, Corporations (10th Ed. 2005) § 198, p. 968; *Maudlin v. Pacific Decision Sciences Corp.*,
     137 Cal. App. 4th 1001, 1009-1010 (2006) (contract rights of acquired entity are unchanged by
27   merger); *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1238 (1st
     Cir. 1996) ("[I]t is hornbook law that the assignee of a mortgage succeeds to all of the assignor's
28   rights power and equities").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   unless both the "Lender" and "Borrower" signed a writing expressly modifying the loan contract.

2   (Deed of Trust; Exh. B to Comp. at ¶ 23).[11]

3       Because the parties agreed that HOLA continued to apply regardless of the sale of the

4   lender or the loan, a judicial finding that HOLA does not "stick" post-merger would violate the

5   "modifications" clause in the deed of trust, which requires that all parties assent to the change.

6   "Modification is a change in the obligation by a modifying agreement which requires mutual

7   assent."  1 Witkin, *Summary of Cal. Law,* Contracts, § 715 (8th ed. 1973), p. 600; *Wade v.*

8   *Diamond A Cattle Co*., 44 Cal. App. 3d 453, 457 (1975).

9       The OTS instructs on this very point:  "[L]oan terms should not change simply because

10  an originator entitled to federal preemption may sell or assign a loan to an investor that is not

11  entitled to federal preemption."  (RJN, Exh. F; OTS Opinion Letter at p. 7 & n. 18); See also

12  *Safeco Ins. Co. v Robert S*., 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what

13  [a contracting party] has omitted.  To do so would violate the fundamental principle that in

14  interpreting contracts …courts are not to insert what has been omitted").  In other words, failing

15  to apply HOLA here would contradict the parties' intent and impermissibly rewrite the terms of

16  the contract.

17  **E.    The Application of HOLA Preempts the HBOR Claim in the Instant Action**

18      The preemption analysis under HOLA is simple.  Step one determines whether the type

19  of state law appears on the list set forth in 12 C.F.R. § 560.2(b).  If it does, the analysis ends and

20  the state law is preempted.  There is no second step.  *Silvas, supra*, at 1005.  Any doubt is

21  resolved in favor of preemption.  *Weiss v. Washington Mutual Bank*, 147 Cal. App. 4th 72, 77

22  (2007) (among other things, fraud and UCL claims were preempted by HOLA).  It should be

23  added that in determining whether a state law claim falls within one of the categories of 12

24  C.F.R. § 560.2(b), courts focus on the "functional effect upon lending operations of maintaining

25  the cause of action", rather than the precise label a plaintiff attaches to the claim.  *Naulty v.*

26  *GreenPoint Mortg. Funding, Inc*., 2009 U.S. Dist. LEXIS 79250, *12 (N.D. Cal. Sept. 3, 2009,

27  _____
[11]   The promissory note and deed of trust are read together as one contract.  *Nevin v. Salk,* 45 Cal.
28  App. 3d 331, 338 (1975).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.: 4:13-CV-04017-KAW
MEMO OF POINTS AND AUTHORITIES

1   Patel, J.).

2        In the present case, the thirteen (13) paragraph complaint clearly challenges the bank

3   procedures concerning the loan modification review process, and Wells Fargo's right to conduct

4   a non-judicial foreclosure after attempts to collect mortgage payments.  In other words,

5   plaintiffs' HBOR allegations excessively impinge on Wells Fargo's procedures in the areas of

6   the "terms of credit, including . . . adjustments to the interest rate, balance [and] payment due"

7   [§ 560.2(b)(4)], and the "processing [and] servicing . . . of . . . mortgages." [§ 560.2(b)(10)].

8   Thus, the HOLA analysis ends and plaintiffs' allegations are preempted.

9        Indeed, there is no scarcity of authority holding that allegations arising from loan

10  modification negotiations are preempted by §§ 560.2(b)(4) and (10).  In *Biggins v. Wells Fargo*

11  *& Co.*, 266 F.R.D. 399, 417 (N.D. Cal. July 27, 2009, White, J.), the borrower's UCL claim was

12  preempted to the extent it was premised on the contention that the lender refused to engage in

13  good faith modification discussions.  Because this allegation directly related to the duties that

14  lenders may owe the borrower, the court found that the "servicing" prong of § 560.2(b)(10) was

15  triggered.  See also, *Zarif v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 29867, *8 (S.D.

16  Cal. Mar. 23, 2011, Hayes, J.) ("each of Plaintiffs' claims specifically challenge the processing

17  of Plaintiffs' loan modification application and servicing of Plaintiffs' mortgage, and fall within

18  the specific types of preempted state laws listed in § 560.2(b)(4) & (10)."); *Guerrero v. Wells*

19  *Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261, *8 (C.D. Cal. Sept. 14, 2010, Fairbank, J.)

20  (claim that the bank wrongfully foreclosed during the modification process was preempted by

21  § 560.2(b)(10)).

22       HOLA also preempts a borrower's claim that a loan modification was "likely" or that the

23  lender would suspend the foreclosure process while the modification review was pending.  See

24  e.g., *Snyder v. Wachovia Mortg.*, 2010 U.S. Dist. LEXIS 68956, *24 (E.D. Cal. July 9, 2010,

25  O'Neill, J.) (claims based on failure to extend a modification is preempted by (b)(4) and (b)(10));

26  *Ibarra v. Loan City*, 2010 U.S. Dist. LEXIS 6583, *17 (S.D. Cal. Jan. 27, 2010, Gonzalez, J.)

27  (ultimate "failure to extend loan modification assistance" is preempted); *DeLeon v. Wells Fargo*

28  *Bank, N.A.*, 729 F. Supp. 2d 1119, 1127 (N.D. Cal. June 9, 2010, Fogel, J.) (allegation that

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

plaintiff received false encouragement during loan modification process was preempted).

In addition, there is ample authority relating to preemption of state claims that would impact the general servicing of a mortgage.  In *Stefan v. Wachovia, World Savings*, 2009 U.S. Dist. LEXIS 113480, *8-9 (N.D. Cal. Dec. 7, 2009, Armstrong, J.), the court held that plaintiff's claims challenging the lender's efforts to foreclose were preempted by HOLA.  The Court noted that each of the "[p]laintiff's claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provisions for 'processing, origination, sale, or purchase of . . . mortgages.'"  *Id*.  Similarly, in *Murillo v. Aurora Loan Services, LLC*, 2009 U.S. Dist. LEXIS 61791, *11 (N.D. Cal. July 17, 2009, Ware, J.), the court dismissed a claim under former Civil Code § 2923.5 on the basis that the allegations fell within 12 C.F.R. § 560.2(b)(10).

In *DeLeon, supra,* 729 F. Supp. 2d 1119, 1127 (N.D. Cal. 2010), plaintiffs alleged that a bank employee represented that no foreclosure would occur because modification negotiations were ongoing, and that the lender wrongfully proceeded to sale without "concluding" these discussions.  Plaintiffs brought a wrongful foreclosure suit, yet the court found that the state law claims related to "servicing" of the subject mortgage and were preempted by HOLA.  *DeLeon*, 729 F. Supp. 2d at 1124-28.  Specifically, the court preempted the state claims for "wrongful foreclosure," "cancellation of the trustee deed," violation of former Civil Code § 2923.5, and quiet title.  *Id*.  See also, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1031-32 (N.D. Cal. Oct. 25, 2010, Laporte, J.) (claims for quiet title, "wrongful foreclosure," and violation of former Civil Code §§ 2923.5-2924 were preempted by § 560.2(b)(10), because they were based on allegedly improper foreclosure procedures).

On a final note, it must be stressed that claims arising from an alleged violation of the HBOR are clearly preempted, especially in light of the additional remedies available to borrowers under this new statute.  See e.g.,  *Kaplan v. Wells Fargo Bank, N.A*. 2013 U.S. Dist. LEXIS 109023, *9 (C.D. Cal. July 30, 2013, Feess, J.) ("Thus, under the standard set forth by the Ninth Circuit in *Silvas*, Plaintiffs' fraudulent misrepresentation, promissory estoppel, negligent misrepresentation, and HBOR claims are preempted."); see also, *Gorton v. Wells Fargo Bank N.A*., 2013 U.S. Dist. LEXIS 86006, *11 (C.D. Cal. June 3, 2013, Selna, J.) ("Plaintiff's HBOR

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

claim is based solely on communications regarding and actions or omissions related to either Plaintiff's application for loan modification, Wells Fargo's denial of that application, or Plaintiff's appeal of the denial . . . [and is therefore] preempted by HOLA . . . .").  Indeed, the seminal case of *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 226-232 (2010) confirms that preemption of HBOR claims is warranted.

Prior to January 1, 2013, the *only* remedy available for a violation of the non-judicial foreclosure laws codified under former Civil Code §§ 2923.5 and 2924, *et seq*. was equitable relief (*i.e.*, an order enjoining an upcoming trustee's sale).  In other words, there was no possibility for a borrower to recover monetary damages.  *Mabry*, 185 Cal. App. 4th at 232.  As a result, the *Mabry* court held that Civil Code § 2923.5 was not preempted by HOLA.[12]  *Id*. at 231. In beginning its analysis on preemption, the Court of Appeal noted: "A remarkable aspect of section 2923.5 is that is appears to have been carefully drafted to avoid bumping into federal law, *precisely because it is limited* to affording borrowers only more time when lenders do not comply with the statute."  *Id*. at 226 (emphasis added).  The Court of Appeal appeared to go out of its way to narrowly construe the impact of the requirements set forth in former Section 2923.5 so as to avoid federal preemption.  "We emphasize that we are able to come to our conclusion that section 2923.5 is not preempted by federal banking regulations because it *is*, or can be construed to be, very narrow."  *Id*. at 231 (emphasis in original).  When examining the lender's obligations under the statute to "assess" and "explore" foreclosure alternatives, the *Mabry* court held that these words "must be narrowly construed *in order to avoid crossing the line* from state

---

[12]  It should be noted that numerous district courts, including this very Court, have held to the contrary, finding that a claim under Civil Code § 2923.5 falls squarely within HOLA's preemptive provisions.  See e.g., *Hayes v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 115435, *19 (N.D. Cal. Aug. 3, 2013, Westmore, J.) ("Federal courts have specifically found that § 2923.5 is preempted by HOLA. . . .Because Plaintiffs will not be able to amend these allegations in a way that is not preempted, the allegations are dismissed without leave to amend."); *Varela v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 181323, *18 (N.D. Cal. Dec. 21, 2012, Westmore, J.) ("The undersigned follows the majority of the precedent in this district, and finds that HOLA applies to this action."); see also, *Taguinod v. World Savings Bank*, 755 F. Supp. 2d 1064, 1074 (C.D. Cal. Dec. 2, 2010, Wilson, J.) ("it is evident that the overwhelming weight of authority has held that a claim under section 2923.5 is preempted by HOLA."); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1127 (N.D. Cal. June 9, 2010, Fogel, J.) (Section 2923.5 claim preempted).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   foreclosure law into federally preempted loan servicing." *Id.* at 232 (emphasis added).[13]

2   Moreover, *Mabry* stressed that preemption was not warranted "because the remedy for

3   noncompliance is a simple postponement of the foreclosure sale, nothing more." *Id.* at 214.

4        In light of the substantial additional remedies now available under the HBOR, a narrow

5   interpretation cannot possibly save the California foreclosure statutes from preemption. *See* e.g.,

6   Civil Code §§ 2924.12, and 2924.17. For example, Civil Code § 2924.12(b) provides for the

7   imposition of monetary damages against a lender or servicer, including the greater of $50,000 or

8   treble actual damages if the court finds that a violation was "intentional," "reckless," or resulted

9   from "willful misconduct." In fact, plaintiffs seek to recover statutory damages under the

10  HBOR, as requested at paragraph 3 of the Prayer for Relief. Moreover, even the government

11  may now seek to impose civil penalties of up to $7,500 per mortgage under the HBOR, for a

12  lender's "multiple and repeated uncorrected violations." Civil Code § 2924.17(c).

13       Since the remedies that can be imposed for a violation of the HBOR exceed a "simple

14  postponement" of the trustee's sale, these new Civil Code sections cannot escape preemption

15  under HOLA. In other words, plaintiff's HBOR allegations fall squarely within 12 C.F.R.

16  §§ 560.2(b)(4) and (10), because this state statute clearly imposes additional obligations on

17  lenders that were not contemplated by the OTS.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24

25  [13] In *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522 (2011), the Court of Appeal

26  acknowledged that the limited relief available under former Civil Code § 2923.5 saved it from colliding with federal preemption. "However, Civil Code section 2923.5 does not provide for

27  damages, or for setting aside a foreclosure sale, nor could it do so without running afoul of federal law, that is, the Home Owners' Loan Act (12 U.S.C. § 1461, *et seq.*; HOLA), and

28  implementing regulations (12 C.F.R. § 560.2(b) (2011))." *Id.* at 526 (citations omitted.)

1

7.   **CONCLUSION**

2        For the foregoing reasons, Wells Fargo requests an order granting its motion to dismiss

3   without leave to amend.

4

5                                         Respectfully submitted,

6   Dated:  September 16, 2013             ANGLIN, FLEWELLING, RASMUSSEN,
                                              CAMPBELL & TRYTTEN LLP
7

8                                         By:   /s/ Michael Rapkine
                                              Michael Rapkine
9                                             mrapkine@afrct.com
                                          Attorneys for Defendant
10                                        WELLS FARGO BANK, N.A.
                                          ("Wells Fargo")
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System:**

*Attorneys for Plaintiffs*

Luis Camacho, Esq.
Ravi K. Sakthivel, Esq.
CAMACHO & ASSOCIATES
1735 North First Street, Suite 245
San Jose, CA 95112
*Tel: 408.579.1970 / Fax: 408.579.1975*
*Email: luis@camachoandassociates.com*
*Email: rksakthivellaw@gmail.com*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **September 16, 2013**.

| Barbara Cruz | */s/ Barbara Cruz* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |